**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

NATHAN VALERIO,
            *Defendant-Appellant.*

No. 04-10192

D.C. No.
CR-03-00194-LRH

OPINION

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Argued and Submitted
December 9, 2004—San Francisco, California

Filed March 28, 2006

Before: Dorothy W. Nelson, Andrew J. Kleinfeld, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Kleinfeld

## COUNSEL

Arthur L. Allen, Assistant Federal Public Defender, Las Vegas, Nevada, for the appellant.

Brian J. Quarles, Assistant United States Attorney, Las Vegas, Nevada, for the appellee.

---

## OPINION

KLEINFELD, Circuit Judge:

We must decide whether a person has a "conviction" for purposes of the federal felon in possession of a firearm statute, under a New Mexico deferred sentence procedure. There are also evidentiary issues.

### Facts

The Las Vegas Metropolitan Police Department sent an undercover informant to Valerio's home to try to buy a gun from him. The informant, who was surreptitiously recording their conversation, told Valerio that he was a convicted felon, yet Valerio sold him a .357 magnum.

The police got a search warrant for Valerio's house, and found a 12-gauge shotgun and a .22 revolver. Valerio had previously been convicted of a felony. He was convicted of felon in possession of a firearm and sale of a firearm to a felon under 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 922(d).

Valerio entered a guilty plea after the jury had already been selected. The government had disclosed that it did not intend to put its undercover informant on the witness stand. It proposed to use the tape recording as evidence that Valerio sold a gun to someone who told him that he was a felon. That

could be proved with Valerio's words on the recording, whether the informant was telling Valerio the truth or not. To prove that the informant really was a felon, the government planned to avoid the hearsay problem that using the tape would pose by instead having the informant's probation officer testify about the informant's felony conviction. Had the case proceeded through trial, the judge proposed to admonish the jury that nothing the informant said on the tape could be considered by the jury for its truth, but only to give context so that the jury could understand what Valerio was responding to when he spoke. Valerio preserved his objection to admissibility of the tape recording.

Valerio's felony conviction, if it was one, was in state court under New Mexico law. He preserved by motion his argument that he was not a convicted felon at all, because his deferred imposition of sentence and subsequent discharge under state law invalidated that status. Valerio had pleaded guilty in a prior New Mexico case to felonious burglary. The judgment in that earlier state case said that he was "found and adjudged guilty and convicted." The court entered an order "deferring the imposition of sentence" pursuant to a New Mexico statute[1] and put him on probation for three years. He got an early "sat-

---

[1] New Mexico Statute 31-20-3 (1978) ("Upon entry of a judgment of conviction of any crime not constituting a capital or first degree felony, any court having jurisdiction when it is satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may either:

A.   enter an order deferring the imposition of sentence;

B.   sentence the defendant and enter an order suspending in whole or in part the execution of the sentence;

C.   or commit the convicted person, if convicted of a felony and not committed for diagnostic purposes within the twelve-month period directly preceding that conviction, to the department of corrections for an indeterminate period not to exceed sixty days for purposes of diagnosis, with direction that a court be given a report when the diagnosis is complete as to what disposition appears best when the interest of the public and the individual are evaluated.").

isfactory discharge from probation" in an "order of dismissal." The order "certifies that the defendant is relieved of any obligations imposed on him" by the previous order "and satisfied his criminal liability," so "this cause is hereby dismissed and the Probation Officer is relieved from any further supervision of the Defendant."

The district court denied Valerio's motion to dismiss and denied his motion to exclude the tape. He pleaded guilty before the case was submitted to the jury, subject to preserving his objections on these issues.

## Analysis

### I.   The felon in possession case.

This section deals only with the felon in possession conviction, not the sale of a firearm to a felon conviction.

### A.   Did Valerio have a felony conviction?

We review *de novo* a district court's order denying a motion to dismiss when the order turns entirely on interpretation of federal and state statutes.[2]

[1] Under the federal felon in possession statute, state law controls on whether a person has a "conviction," and "expunged" felonies disappear for purposes of determining whether subsequent possession of a gun is a federal crime unless the felon is expressly told otherwise:

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had

---

[2]*See United States v. Laskie*, 258 F.3d 1047, 1049 (9th Cir. 2001).

civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.[3]

The district court correctly held that Valerio cannot prevail under this provision because he was indeed convicted under New Mexico law, and his conviction was never expunged or otherwise invalidated for purposes of the federal statute.

[2] When a court must determine whether a state conviction has been invalidated for purposes of the federal felon in possession statute, the federal statute requires the court to proceed along this path:

1.  Use state law to determine whether the defendant has a "conviction." If not, the defendant is not guilty. If so, go to step 2.

2.  Determine whether the conviction was expunged, set aside, the defendant was pardoned, or the defendant's civil rights were restored. If not, the conviction stands. If so, go to step 3.

3.  Determine whether the pardon, expungment, or restoration of civil rights expressly provides that the defendant may not ship, transport, possess, or receive firearms. If so, the conviction stands. If not, the defendant is not guilty.

Valerio's problem is that, although he would prevail if he got to the third step, the "unless" clause, he cannot get past the second. The three step sequence is the only sound way to read the federal statute: (1) "conviction . . . shall be determined in

---

[3]18 U.S.C. § 921(a)(20).

accordance with the law of the jurisdiction . . . ."; (2) "conviction which has been expunged . . . shall not be considered a conviction; (3) "unless such . . . expungement . . . expressly provides that the person may not . . . possess . . . firearms."[4]

### 1. Was Valerio "convicted"?

[3] State law determines whether the defendant has a felony conviction, so New Mexico law controls whether Valerio's deferred sentence for burglary was a "conviction." It was. There is no question in this case that the burglary was a felony under New Mexico law.

[4] What might raise a serious question in some jurisdictions is that Valerio was never sentenced for the burglary. A judgment of conviction often requires a sentence as well as a guilty plea. Valerio pleaded guilty, but imposition of sentence was deferred. But under New Mexico law, a guilty plea is enough to establish a conviction, even though the defendant is never sentenced.

The New Mexico Supreme Court so held in *Padilla v. State*.[5] In New Mexico, there is a "conviction" when the defendant pleads guilty:

> [t]here is some merit to the contention that upon dismissal of criminal charges under the deferred sentence provision . . . there has been no prior conviction. However, this court in previous cases has determined that the contrary is true, holding that *a "conviction" refers to a finding of guilty and does not include the imposition of a sentence.*[6]

---

[4]18 U.S.C. § 921(a)(20).

[5]*Padilla v. State*, 568 P.2d 190 (N.M. 1970).

[6]*Id*. at 192 (emphasis added).

There is no distinction that makes a difference between that case and this one, and *Padilla* controls. Thus, Valerio was "convicted" under New Mexico law.

## 2. Was the conviction invalidated?

The next step under the federal statute is to determine whether the conviction was expunged, set aside, the defendant was pardoned, or the defendant's civil rights were restored. This determination depends on the "order of dismissal" that "certifies that the defendant is relieved of any obligations imposed on him" by the previous order "and satisfied his criminal liability," so "this cause is hereby dismissed and the Probation Officer is relieved from any further supervision of the Defendant."

[5] Under New Mexico law, such a termination of a criminal proceeding does not amount to any of the kinds of invalidation of a conviction specified by the federal felon in possession statute. The New Mexico statute says that a defendant who successfully obtains a dismissal of a suspended imposition of sentence is "relieved of any obligations."[7] This could arguably be read to amount to expungement, but that is not how the New Mexico courts have construed it. New Mexico has another procedure called conditional discharge, which, like an expungement, does eliminate the conviction, under *State v. Herbstman*[8] and *State v. Lopez*.[9] But because deferred imposition of sentence, Valerio's procedure, is preceded by an adjudication of guilt while conditional discharge is not, *State*

---

[7]"Whenever the period of deferment expires, the defendant is relieved of any obligations imposed on him by the order of the court and has satisfied his criminal liability for the crime, the court shall enter a dismissal of the criminal charges." New Mexico Revised Statutes Annotated § 31-20-9.

[8]*State v. Herbstman*, 974 P.2d 177, 180 (N.M. App. 1998).

[9]*State v. Lopez*, 993 P.2d 767, 770 (N.M. App. 1999).

*v. Brothers*[10] and *State v. Padilla*[11] hold that a conviction still exists when the imposition of sentence is deferred.[12]

[6] This conclusion compels us to affirm the felon in possession conviction. This is counterintuitive for two reasons. First, Valerio is not a convicted felon for purposes of the *state* felon in possession statute.[13] As far as the State of New Mexico is concerned, he is entitled to possess firearms. The reason why is that the state statute requires a sentence as well as a conviction,[14] and Valerio's burglary sentence was deferred and never imposed. The Eleventh Circuit recently decided a case where, despite the felony conviction, the defendant was entitled under state law to possess firearms, and likewise ruled that it made no difference to the defendant's rights under the federal statute.[15] The federal government criminalizes quite a few things that the laws of various states do not, such as possession of eagle feathers.[16]

[7] Second, and more troubling, an opinion of the New Mexico Attorney General said that persons in Valerio's situation *were* entitled to possess firearms under the federal statute. The 1988 opinion of the New Mexico Attorney General's Office says that the *federal* right to possess firearms is

---

[10]*State v. Brothers*, 59 P.3d 1268, 1271 (N.M. App. 2002).

[11]*Padilla v. State*, 568 P.2d 190, 192 (N.M. 1970).

[12]We see no reason to doubt that the Supreme Court of New Mexico would reach the same conclusions these intermediate appellate court decisions did. *See Arizona Elec. Power Co-op., Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995) (in the absence of a decision by the state's highest court, a federal court must predict how that court would resolve an issue by looking to the decisions of that state's intermediate appellate courts).

[13]New Mexico Statute § 30-7-16 (1978); *State v. Lopez*, 993 P.2d 767, 770 (N.M. App. 1999).

[14]*Id.* at 769.

[15]*United States v. Nix*, ___ F.3d ___, 2006 WL 301891 (11th Cir. Feb. 9, 2006).

[16]16 U.S.C. § 668(a).

restored under New Mexico law when a person successfully completes the period of deferred imposition of sentence, because the dismissed case "would not be considered a 'conviction' for purposes of 18 U.S.C. § 922."**¹⁷** The opinion cannot be reconciled with the New Mexico cases discussed earlier. The Attorney General's opinion says that because "the right to vote is automatically restored upon successful completion of the period of deferment [of imposition of sentence] . . . successful completion of a deferred sentence under New Mexico law would not be considered a 'conviction' for purposes of 18 U.S.C. § 922."**¹⁸**

Those civil rights that were restored to Valerio, were restored by operation of law, not by a certificate. Had they been restored by a certificate that told him he was no longer convicted and that his civil rights were restored, then the "anti-mousetrapping rule" would require that state to "tell the felon point blank that guns are not kosher" in his certificate for the federal prohibition on possession to apply.**¹⁹** Valerio's problem, though, is that he cannot get to the third step of the federal analysis, where the "anti-mousetrapping rule" operates. The reason is that his civil rights were not restored for purposes of the federal statute.

**[8]** The problem with the New Mexico Attorney General's analysis is that it treats restoration of the right to vote as sufficient for the federal statutory phrase, "has had civil rights restored," but the federal cases do not. Though the federal statutory phrase does not require that all of a person's civil rights have been restored, neither is it satisfied where any of his civil rights have been restored. Circuit law establishes that

---

**¹⁷***Id.*

**¹⁸***Id* (internal citations omitted).

**¹⁹***United States v. Herron*, 45 F.3d 340, 343 (9th Cir. 1995) (quoting *United States v. Erwin*, 902 F.2d 510, 512-13 (7th Cir. 1990), *cert. denied*, 498 U.S. 859 (1990)).

the restoration of civil rights must be more than *de minimis* and "must be substantial but need not be complete."[20]

Under New Mexico law, Valerio's civil right to vote has been restored.[21] However, we have not found a case that says restoration of the right to vote is sufficient. A legislature might choose to allow convicted felons to vote for reasons unrelated to their dangerousness, so it is not sufficient to amount to restoration of civil rights for purposes of the federal statute.

[9] By contrast to the right to vote, no civil right could be more relevant to a felon's future dangerousness than the right to possess firearms. And New Mexico has restored Valerio's right to possess firearms.[22] But that is not enough.

> In Congress' view, existing state laws 'provide less than positive assurance that the person in question no longer poses an unreasonable risk of dangerousness.' Congress meant to keep guns away from all offenders who, the Federal Government feared, might cause harm, even if those persons were not deemed dangerous by the state.[23]

We held in *United States v. Andaverde*,[24] that a state right to possess a shotgun did not suffice, in the absence of the right to vote, to serve on a jury, and to hold public office. We held in *United States v. Meeks*[25] that only if a felon's civil rights are substantially restored do we proceed to the next step,

---

[20]*United States v. Herron*, 45 F.3d 340, 342 (9th Cir. 1995) (quoting *United States v. Dahms*, 938 F.2d 131, 133 (9th Cir. 1991)).

[21]N.M. Rev. Stat. § 31-13-1.

[22]N.M. Stat. § 30-7-16 (1978).

[23]*Caron v. United States*, 524 U.S. 308, 315 (1998) (quoting *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 120 (1983)).

[24]*United States v. Andaverde*, 64 F.3d 1305 (9th Cir. 1995).

[25]*United States v. Meeks*, 987 F.2d 575 (9th Cir. 1993).

determining whether the state has restricted his right to possess firearms.[26] Likewise the Fifth Circuit held in *United States v. Thomas*[27] that "it simply does not matter what the state law provides concerning possession of firearms," in the absence of a more complete restoration of civil rights.[28]

In *United States v. Dahms*,[29] we held that a convicted felon who regains "the rights to vote, to sit on a jury and to hold public office in the state in which he was originally convicted has had his rights substantially restored under § 921(a)(20)."[30] All the cases we have found from other circuits use the same three civil rights as the test of whether civil rights have been restored for the federal felon in possession crime.[31] Distinguishing *Dahms*, we held in *United States v. Meeks*[32] that even where the felon had regained his right to vote and to hold most public offices, where the felon could not serve on a jury or hold the public offices of sheriff or highway patrol officer the state's restoration of civil rights was not substantial enough to entitle him to possess firearms under the federal statute.[33] The Fourth Circuit likewise held that there is insufficient restoration of civil rights where the state did not restore the right to serve on a jury.[34]

---

[26]*Id*. at 578.

[27]*United States v. Thomas*, 991 F.2d 206 (5th Cir. 1993).

[28]*Id*. at 215.

[29]*United States v. Dahms*, 938 F.2d 131 (9th Cir. 1991).

[30]*Id*. at 133 (following the Sixth Circuit's rule in *United States v. Cassidy*, 899 F.2d 543 (6th Cir. 1990)).

[31]*See e.g., United States v. Cassidy*, 899 F.2d 543 (6th Cir. 1990); *United States v. Thomas*, 991 F.2d 206 (5th Cir. 1993); *United States v. Metzger*, 3 F.3d 756 (4th Cir. 1993); *McGrath v. United States*, 60 F.3d 1005 (2nd Cir. 1995); cf. *United States v. Ramos*, 961 F.2d 1003 (1st Cir. 1992).

[32]*United States v. Meeks*, 987 F.2d 575, 578 (9th Cir. 1993).

[33]*Id*.

[34]*United States v. Metzger*, 3 F.3d 756, 759 (4th Cir. 1993).

**[10]** This case is controlled by *Meeks*. Valerio's right to serve on a jury and his right to hold public office have not been restored.[35] That means he does not get past the second step of the analysis, restoration of civil rights, so we do not reach the third step, whether the state has restricted his right to possess firearms. The district court correctly denied his motion to dismiss.

## II.   Admission of the Tape

The government argues that the admissibility of the tape recording is moot because Valerio pleaded guilty. That is incorrect. He objected to admission of the tape *in limine*, and the court overruled the objection. That suffices to preserve the issue under Rule 11(a)(2).[36] An *in limine* ruling that evidence to which objection is made would nevertheless be admitted is analogous to denial of a pretrial motion to suppress.[37]

**[11]** The district court did not abuse its discretion[38] in ruling that the audiotape would be admissible subject to an admonition that the jury could not consider the informant's words on the tape for their truth, but only to give context to what Valerio said.[39] Valerio's statements on the tape were admis-

---

[35]N.M. Rev. Stat. §§ 31-13-1, 38-5-1.

[36]Rule 11(a)(2) ("With the consent of the court and the government, a defendant may enter a conditional plea of guilty . . . reserving the right to have an appellate court review an adverse determination of a specified pre-trial motion.").

[37]*See United States v. Smith*, 389 F.3d 944 (9th Cir. 2004) (reviewing, on the merits, the denial of a motion to suppress evidence that was reserved in a conditional guilty plea).

[38]Our review is for abuse of discretion. *United States v. Lynch*, 367 F.3d 1148, 1159 (9th Cir. 2004).

[39]The district court ruled that "the Court will give a cautionary instruction as to any statements made by the confidential informant on the tape. They clearly are not evidence and cannot be used as any form of evidence and can only provide context to the statement of the defendant."

sions.[40] Knowing what Valerio meant by what he said would be difficult without knowing what words he was responding to. Nothing the undercover informant said would be considered by the jury for its truth, but only to give context to what Valerio said, under the admonition. The informant's statement to Valerio that he was a felon could not be considered by the jury to prove that he was.[41] His probation officer's testimony would be used for that.

**[12]** Valerio's statements on the tape, and the context provided by the informant regardless of whether the informant was telling the truth, were highly relevant to providing the mental element of the crime, "knowing or having reasonable cause to believe that"[42] the informant was a felon. And there was no hearsay or confrontation clause barrier to proving that mental element with the tape subject to the admonition.

No doubt defense counsel was loaded for bear with impeachment questions that he could have used, had the informant taken the stand. Quite possibly that is why the government did not want to put him on. But it just did not matter to what the tape proved whether the informant was a liar.

## Conclusion

The felon in possession conviction (but not the sale of a firearm to a felon conviction) is troubling, because Valerio is guilty under Ninth Circuit and New Mexico law of a crime for possessing a firearm even though the New Mexico Attorney General's opinion erroneously told him he had a right to do so. But the result is compelled by circuit precedent and consistent with precedent from our sister circuits.

---

[40]Fed. R. Evid. § 801(d)(2).

[41]18 U.S.C. § 922(d).

[42]*Id.*

We **AFFIRM** except that we grant a remand to the district court for the limited purpose of consideration of the sentencing issues raised by *United States v. Ameline*.[43]

---

[43]*United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (en banc).